UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SUSAN HAVENS, on behalf of herself )
and a class,                       )
                                   )
                Plaintiff,          )
                                   )
        v.                         )  Case No. 3:12-CV-671-PPS
PORTFOLIO INVESTMENT               )
EXCHANGE INC. and CREDIT           )
CONTROL, LLC,                      )
                                   )
                Defendants.        )

## ORDER AND OPINION

Susan Havens racked up more than $11,000 in credit card debt, and when she didn't pay her bill, the debt was sold by the credit card company to an out of state debt collector who then attempted to collect the debt. Havens purports to represent a group of similarly situated people in this putative class action brought under the Fair Debt Collection Practices Act, the crux of which involves the validity of the assignment and attempted collection of the debt by an out-of-state debt collector. There are two defendants, Portfolio Investment Exchange Inc., the out-of-state entity who originally bought the debt from the bank, and Credit Control, LLC, the company Portfolio Investment Exchange hired to collect the debt.

Both Defendants seek dismissal of the complaint.[1] The core question is whether Portfolio

---

[1] Havens has also filed a Motion to Strike (or alternatively, Motion to Convert the Motion to Dismiss to a Motion for Summary Judgment) encompassing an email that counsel for the Defendants received from the Indiana Department of Financial Institutions concerning the agency interpretation of certain administrative regulations relevant to this case. (DE 23.) Because I am not relying in any way on the email in arriving at my decision, the Motion to Strike will be denied as moot.

1

Investment Exchange did, in fact, need to be licensed to make consumer loans in Indiana before it could try to collect Havens's debt. If so, the class action lawsuit will go forward; if not, both of the counts alleged in the complaint fail.

Credit Control and Portfolio Investment Exchange point me to convincing authority that a license is unnecessary. They cite commentary to the applicable loan licensing statute, as well as the loan assignment statute, which expressly reject the notion that an out-of-state company accepting assignment of an Indiana consumer loan without physically entering the state – like Portfolio Investment Exchange – must have a loan license. For those reasons, and for the reasons discussed more thoroughly below, I will grant the motions to dismiss, albeit without prejudice.

## BACKGROUND

The facts alleged in the complaint, which I accept as true for present purposes, are short and straightforward. Havens is a resident of Nappanee, Indiana. (DE 1 at 1.) At some point prior to December 2011, she ran up a balance of around $11,000 on a credit card issued by HSBC. (DE 1-1 at 2-3.) HSBC then sold her loan to Portfolio Investment Exchange. (*Id.*) That company is licensed as a collection agency in Illinois, but not in Indiana. (DE 1 at 2-3.) It doesn't have an Indiana Uniform Consumer Credit Code (IUCCC) loan license. (*Id.* at 2.) Portfolio Investment Exchange's agent, Credit Control – which *is* a licensed Indiana collection agency – contacted Havens by letter on December 27, 2011 seeking payment on the assigned debt. (DE 1-1 at 2.) Havens claims that by accepting the assignment of her loan without the proper license, Portfolio Investment Exchange – and by extension, its agent, Credit Control – engaged in improper debt collection activities in violation of the Fair Debt Collection Practices

Act and the Indiana Deceptive Consumer Sales Act (IDCSA). (DE 1 at 4-5.) Both defendants now seek dismissal of the complaint.

## DISCUSSION

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007). I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, but I don't need to accept threadbare legal conclusions supported by purely conclusory statements. *See Iqbal*, 556 U.S. at 678-79. The first step in my analysis is to identify and disregard all allegations in the complaint that are not entitled to the assumption of truth, especially including any legal conclusions. *Id.* at 678. Then I must look at the remaining allegations to determine whether they plausibly – and not merely possibly or conceivably – suggest an entitlement to relief. *Id.* This task invariably requires me to draw on my judicial experience and common sense. *Id.* at 679.

The central issue in this case is whether Portfolio Investment Exchange is required to have an IUCCC loan license to be assigned loans involving Indiana debtors, notwithstanding the fact that it doesn't have a physical presence in the state and it uses an Indiana collection agency (Credit Control) to engage in collections efforts. I should first explain why that is the pivotal question in this case before addressing the merits.

Havens's first cause of action attempts to state a claim under the Fair Debt Collections Practices Act. *See* 15 U.S.C. § 1692k. Under the applicable provision, a "debt collector" is

barred from falsely representing "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Havens's theory is that if Portfolio Investment Exchange is required to have an IUCCC loan license in order to take assignment of her debt and attempt to collect it, then the lack of any such license renders the assignment of that debt illegal – and thus any collection efforts concerning it would be a FDCPA violation. Similarly, the Indiana Deceptive Consumer Sales Act defines it to be a deceptive or unconscionable act to solicit or engage in a consumer transaction without the requisite license. *See* Ind. Code § 24-5-0.5-10 (a)(1).

Based on the claims brought by Havens, the importance of the licensing question is obvious. If a license is required, then it's possible that Havens may have cognizable claims under the FDCPA and the similar state law. If, on the other hand, Portfolio Investment Exchange doesn't need a license, then both of those claims necessarily must fail.

So does Portfolio Investment Exchange need an IUCCC loan license? As I mentioned above, the defendants raise a strong threshold argument in their motion to dismiss that the relevant licensing provision of the IUCCC is not intended to apply extraterritorially – that is, companies without a physical presence in the state are exempt from its requirements. They cite commentary to the particular statutory provision indicating this. Here's what the applicable subsection of the IUCCC states:

> A person that does not qualify under subsection (1) [as a depository institution, a subsidiary of a depository institution, or a credit union service organization] or (2) [as a collection agency] shall acquire and retain a license under this article in order to regularly engage in Indiana in the following actions with respect to consumer loans that are not mortgage transactions:
> (a) The making of consumer loans.
> (b) Taking assignments of consumer loans.
> (c) Undertaking direct collection of payments from or enforcement of rights against debtors arising from consumer loans.

Ind. Code § 24-4.5-3-502(3). The statute is conspicuously silent as to what "regularly engag[ing] in Indiana" means – in other words, it doesn't say how substantial the nexus must be between the consumer loan activity in question and Indiana.

Fortunately, there is some extraneous guidance on this issue. When the Indiana legislature passed the original version of this statute in 1968, it included the following commentary (which it identified as the "Uniform Consumer Credit Code Comment"):

> *Out-of-state lenders who make loans through the mail normally will not be subject to the licensing requirement if the evidence of debt is received by the lender out of this State*. Section 1.201. An out-of-state lender who opens a loan office in this State at which evidence of debt for [consumer] loans is received must be licensed.

*Id.* at cmt. 2 (emphasis added). Although the law has been changed several times over the past several decades, including a major (though seemingly nonsubstantive) rewording in 2006, the legislature has never altered this guidance.

This is not the only commentary supporting the contention that out-of-state companies without a presence in Indiana don't need an IUCCC loan license. Section 24-4.5-6-201 of the Indiana Code generally addresses which entities will fall under the loan licensing scope of the IUCCC. It states that it will apply to any entity "engaged in Indiana" in a variety of consumer activities. *Id.* at 1. Once again, the statute doesn't specifically define what that geographical restriction means. But the commentary to the provision does – and it specifically addresses the issue of out-of-state companies taking assignment of loans involving Indiana consumers. That commentary states:

> Assignees of consumer obligations must file notification under Section 6.202 only if all of the three following elements are present: (1) the assigned obligations arose out of sales, leases or loans made in this State, (2) the assignee has an office or place of business in this State, and (3) the assignee undertakes direct collection

5

> of payments from the debtors or direct enforcement of obligations against debtors. *An assignee having no office or place of business within this State is not required to file notification even though he is engaged in direct collection or direct enforcement of consumer accounts in this State*.

*Id.* at cmt. 2 (emphasis added).

Given the foregoing commentary, not surprisingly, Portfolio Investment Exchange's main argument is straightforward. It says that I should rely on that commentary and interpret the IUCCC loan licensing statutes to exclude out-of-state companies without a physical presence in the state. That makes a good deal of sense, for obvious reasons.

Havens responds in two ways. First, she argues that this statutory commentary shouldn't be controlling because the statute has been amended several times since it was originally enacted. Second, she disputes its applicability, saying that it is merely the commentary to the model uniform UCCC, and not the Indiana statute, and thus it shouldn't be controlling.

I'll address the second argument first because it's the easiest to resolve. It simply doesn't matter whether the commentary cited by Portfolio Investment Exchange represents the views of the drafters of the model UCCC (as opposed to the Indiana legislators). Indiana law is quite clear that model or uniform commentary is persuasive when construing an ambiguous statute. *See Basileh v. Alghusain*, 912 N.E.2d 814, 821 (Ind. 2009) ("The comments to a uniform act are indicative of the Legislature's intent in enacting a statute based on the uniform act."); *In re Lawrance*, 579 N.E.2d 32, 38 (Ind. 1991) (stating that a court may "consider the notes of the Commissioners of Uniform Laws when construing a uniform statute") (*quoting Eads v. J & J Sales Corp.*, 257 Ind. 485, 275 N.E.2d 802, 806 (1971)). So I must view this commentary as persuasive guidance on the extraterritoriality issue unless the statute has been changed to render it obsolete.

And that takes me to Havens's first argument that the commentary should be disregarded because §§ 24-4.5-6-201 and 24-4.5-3-502 have been amended several times since their initial enactment in 1968. It's certainly true that they have, in fact, been amended – and substantially so, at least with respect to § 24-4.5-3-502.[2] But none of the amendments involved expanding the extraterritorial application of the loan licensing requirements, and at no point did the Indiana legislature indicate that the original guidance was no longer applicable. Indeed, based on my review of the public laws amending the statute, the issue of extraterritoriality never even came up during subsequent amendments.

Therefore, I am confronted with a situation in which I must construe an ambiguous statute that seems to be intended to be given a particular construction by its drafters when it was first enacted, with subsequent amendments that don't seem to change the initial construction. While I haven't been able to find any case in the Seventh Circuit matching that precise fact pattern, there are several published Indiana decisions involving the analogous situation in which a statute was construed a certain way by the courts, with a later amendment that doesn't address this construction. Those cases hold that unless the amendment specifically is intended to change the judicial construction, it "embodies" that prior interpretation. *See Necessary v. Inter-State Towing*, 697 N.E.2d 73, 79 (Ind. Ct. App. 1998); *Thomas v. Eads*, 400 N.E.2d 778, 783 (Ind. Ct. App. 1980). The theory is that when a legislature is aware that a statute is being interpreted in a particular way and fails to expressly reject that construction, it has effectively "acquiesced" to it. *See Thomas*, 400 N.E.2d at 783.

---

[2] Section 24-4.5-3-502 appears to have been largely rewritten in 2006, although the changes seem to be mostly cosmetic (though extensive), and the substance of the law seems unchanged.

I see little reason why this principle wouldn't apply with even more force to a legislatively-imposed (or at least suggested) statutory construction. The Indiana legislatures that amended §§ 24-4.5-6-201 and 24-4.5-3-502 could have had little doubt that the loan licensing provisions of the IUCCC were not intended to apply to out-of-state assignees of Indiana consumers' debt; it says so right in the commentary to those provisions, after all. Yet they didn't do anything to alter the statute or change the guidance to correct that. That inaction is fatal to Havens's argument. Based on the persuasive commentary accompanying the relevant provisions of the IUCCC, I conclude that the best way to interpret the loan licensing requirement is to exclude out-of-state assignees of Indiana consumer loans – including companies like Portfolio Investment Exchange that don't have a presence in the state.

Much of Havens's response to the motion to dismiss amounts to a deflection. Perhaps Portfolio Investment Exchange doesn't need to obtain an IUCCC loan license, she acknowledges, but in that case it should be licensed as an Indiana collection agency (which, she goes on to claim, is the license that most consumer loan assignees obtain). The defendants respond by pointing out that this isn't what Havens alleged in her complaint.

They have a point. I think a fair reading of Havens's complaint shows that her main beef is that she thinks that Portfolio Investment Exchange must be licensed as an IUCCC loan company, and not a collection agency. But let's set that objection aside for the moment. There's (potentially) an even bigger problem with her new theory.

As noted above, Section 24-4.5-3-502(2) specifically exempts licensed collection agencies from the IUCCC loan licensing requirement. It also includes commentary suggesting that out-of-state companies need not obtain such a license if they do not establish a physical

8

presence in the state. See the problem? If Havens's interpretation of the statute is correct, and an out-of-state company must be licensed as a collection agency if it doesn't get an IUCCC loan license, *then why would the commentary need to exempt out-of-state companies without a physical presence in the state in the first place*? They already would be excused from any IUCCC loan license requirement by virtue of having an Indiana collection license.

Put simply, Havens's construction of the IUCCC loan licensing statute would render that commentary entirely superfluous. That can't be what the drafters intended. And it's a tenet of statutory interpretation that courts "will avoid an interpretation that renders any part of the statute meaningless or superfluous." *Gargano v. Lee Alan Bryant Health Care Facilities, Inc.*, 970 N.E.2d 696, 702 (Ind. Ct. App. 2012). To be sure, this canon of construction must apply with less force when the meaningless language will be the statute's commentary (as opposed to a provision in the statute itself), but it still should carry *some* weight when the alternative is to render that specifically included commentary wholly superfluous.

So I tentatively agree with the defendants that Havens's apparent theory that Portfolio Investment Exchange needed to become licensed as a collection agency if it wasn't going to obtain an IUCCC loan license is fundamentally unconvincing. But I'm hesitant to foreclose this argument entirely, since it wasn't really alleged in her complaint, and the parties didn't address the line of reasoning in great detail in their dismissal briefing. Therefore, I'll err on the side of caution and dismiss the current complaint without prejudice. If she'd like to elaborate on her collection agency license theory in a new pleading (and then the parties can hash it out in the inevitable dismissal briefing), she's free to do so – though I'll caution that she should be prepared to address my foregoing concern that such an argument would render the IUCCC

9

commentary superfluous.

## CONCLUSION

Therefore, and for the foregoing reasons, the pending Motion to Dismiss (DE 21) is **GRANTED**. The pending Motion for Class Certification (DE 5) and Rule 12(f) Motion to Strike (DE 23) are **DENIED AS MOOT**. The pending complaint is **DISMISSED WITHOUT PREJUDICE.** Havens will be given thirty days to amend her complaint if she so desires.

**SO ORDERED.**

ENTERED: August 15, 2013.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
